UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THEODORE C.,

              Plaintiff,

     v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

_____

**DECISION AND ORDER**

6:20-CV-06482 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Theodore C. ("Plaintiff") brings this action pursuant to Title II of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for disability insurance benefits ("DIB"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 14; Dkt. 15), and Plaintiff's reply (Dkt. 16). For the reasons discussed below, Plaintiff's motion (Dkt. 14) is denied and the Commissioner's motion (Dkt. 15) is granted.

## BACKGROUND

Plaintiff protectively filed his application for DIB on March 1, 2017. (Dkt. 11 at 29, 161-67).[1] In his application, Plaintiff alleged disability beginning on June 13, 2016. (*Id.* at 29, 161). Plaintiff's application was initially denied on May 18, 2017. (*Id.* at 29, 75-86). A video hearing was held before administrative law judge ("ALJ") Hortensia Haaversen on October 2, 2018. (*Id.* at 29, 49-74). Plaintiff appeared in Rochester, New York, and the ALJ presided over the hearing from Falls Church, Virginia. (*Id.* at 29). On April 25, 2019, the ALJ issued an unfavorable decision. (*Id.* at 29-43). Plaintiff requested Appeals Council review; his request was denied on May 12, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 5-10). This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 404.1520(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 404.1520(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 404.1520(f).  If the claimant can perform such requirements, then he or she is not disabled.  If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 404.1520(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Initially, the ALJ determined that Plaintiff last met the insured status requirements of the Act on June 30, 2017. (Dkt. 11 at 31). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity from June 16, 2016, the alleged onset date, through June 30, 2017, his date last insured. (*Id.*).

At step two, the ALJ found that Plaintiff suffered from the severe impairment of arthritis of both knees. (*Id.* at 32). The ALJ further found that Plaintiff's hypertension, hyperlipidemia, hydrocele, depression, anxiety, obesity, or history of cardiac aortic valve replacement were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 35). The ALJ particularly considered the criteria of Listing 1.02 in reaching her conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), additionally limiting Plaintiff to:

> lift and carry ten pounds frequently and twenty pounds occasionally, sit for six hours in an eight-hour workday, and stand or walk for six hours in an eight-hour workday. He could never crawl or climb ladders, ropes, or

scaffolds, but was able to climb ramps and stairs occasionally, and could perform all other postural activities occasionally.

(*Id.* at 36).  At step four, the ALJ found that Plaintiff was capable of performing past relevant work as an auto salesperson and industrial machine sales representative.  (*Id.* at 41).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 42).

## II.   The Commissioner's Determination Is Supported by Substantial Evidence and Free from Legal Error

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that: (1) the ALJ improperly found Plaintiff's mental health impairments to be non-severe; and (2) the ALJ relied upon her own lay opinions in assessing an RFC not tethered to the record or supported by substantial evidence.  (Dkt. 14-1 at 11-21).  The Court has considered each of these arguments and, for the reasons discussed below, finds them to be without merit.

### A.   Severe Impairment Determination

Plaintiff argues the ALJ failed to assess Plaintiff's anxiety and depression at step two as well as to take Plaintiff's non-severe impairments of anxiety and depression into account in her RFC finding.

### 1.   The Step Two Severity Standard

At step two of the disability analysis, the ALJ determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id.* § 404.1520(c).  "An impairment must be established by medical

- 6 -

evidence consisting of signs, symptoms, and laboratory findings." *Colon v. Astrue*, No. 03:08-CV-1276 (DJS), 2009 WL 1289244, at *1 (D. Conn. May 6, 2009) (citing 20 C.F.R. § 404.1508).   The Commissioner's Regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; "[u]se of judgment"; "[r]esponding appropriately to supervision, co-workers and usual work situations"; and "[d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1522(b).

"An impairment 'must last or be expected to last for a continuous period of 12 months.'" *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 46 (W.D.N.Y. 2003) (quoting 20 C.F.R. § 404.1509); *see Barnhart v. Walton*, 535 U.S. 212, 213 (2002) (holding that the Social Security Act requires both the impairment and the subsequent inability to engage in any substantial gainful activity to last twelve months to meet the durational requirement for disability).   Additionally, to receive DIB benefits, a claimant must show the onset of the disability occurred before the date last insured.   *See* SSR 83-20 (1983) ("A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s).").

"The claimant bears the burden of presenting evidence establishing severity." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012), *adopted*, 32 F. Supp. 3d 253 (N.D.N.Y. 2012).   Step two's "severity" requirement is *de minimis* and is meant only to

screen out the weakest of claims. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Despite this lenient standard, the "'mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe.'" *Taylor*, 32 F. Supp. 3d at 265 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)). Rather, "to be considered severe, an impairment or combination of impairments must cause 'more than minimal limitations in [a claimant's] ability to perform work-related functions.'" *Windom v. Berryhill*, No. 6:17-CV-06720-MAT, 2018 WL 4960491, at *3 (W.D.N.Y. Oct. 14, 2018) (quoting *Donahue v. Colvin*, No. 6:17-CV-06838(MAT), 2018 WL 2354986, at *5 (W.D.N.Y. May 24, 2018) (alteration in original)).

In the case of mental impairments, an ALJ is required to employ a "psychiatric review technique," also known as the "special technique." *Jeffrey C. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1393, 2021 WL 5711997, at *4 (N.D.N.Y. Dec. 2, 2021). "This technique also enables administrative law judges to determine[ ]whether medically[ ] determinable mental impairments are severe (a Step 2 issue) and whether they meet or are equivalent in severity to any presumptively disabling mental disorder (a Step 3 issue)." *Id.* (quotation and citation omitted). An assessment using this technique requires consideration of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Jane M. A. v. Comm'r of Soc. Sec.*, No. 19-CV-00808-JGW, 2021 WL 63066, at *4 (W.D.N.Y. Jan. 7, 2021) (quotation and citation omitted). "According to the regulations,

if the degree of limitation in each of the first three areas is rated 'mild' or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not 'severe' and will deny benefits." *Id.*

### 2. The ALJ's Consideration of Plaintiff's Impairments

Plaintiff claims the ALJ failed to assess his anxiety and depression as medically determinable severe impairments at step two of the decision. Plaintiff argues that the ALJ's determination at this step was against the weight of the evidence, warranting remand. The Court disagrees.

The ALJ discussed Plaintiff's mental health treatment history in detail at step two of the analysis. Specifically, the ALJ stated:

> Medical records prior to the date last insured indicate that [Plaintiff] had anxiety and depressive disorders (Exhibits 2F, 4F, 5F, and 14F), and that most of his issues stemmed from situational stressors arising from poor finances, lack of employment, and relationship problems (Exhibits 2F, and 14F). His alleged symptoms prior to the date last insured consisted of anxiety, depression, disturbance of sleep, decreased interest, fatigue, akathisia, and social withdrawal (Exhibits 2F, 4F, 5F, and 14F). However, he was typically described in the record prior to June 30, 2017 as alert, oriented, cooperative, clear, fluent, coherent, and goal directed with good or appropriate eye contact, and an appropriate or normal mood and affect, and mental status examinations were negative for a thought disorder, psychomotor abnormalities, suicidal or homicidal ideation, panic attacks, disturbance of appetite, mania, paranoia, delusions, and hallucinations (Exhibits 2F, 4F, 5F, and 13F). Furthermore, examiners prior to the date last insured found his insight and judgment to be only mildly impaired (Exhibits 2F, 5F, and 13F). Although a new diagnosis of panic disorder and a host of additional symptoms including panic attacks, feelings of guilt and worthlessness, irritability, intrusive recollections, apprehension, hypervigilance, disturbance of appetite, and intrusive recollections have been reported in recent years (Exhibits 8F, 9F, 11F, and 12F), this degree of symptomatology was not documented on or before the date last insured.

The evidence of record fails to demonstrate that [Plaintiff] has ever required psychiatric hospitalization, sought crisis services, or attended an intensive outpatient/partial hospitalization program. He attended only four counseling sessions between November 28, 2016 and March 6, 2017, and reported decreased symptoms on his final appointment. (Exhibit 14F). [Plaintiff] does not appear to have sought or received additional psychotherapy at any other time from the alleged onset date through the date last insured. Although [Plaintiff] has been seeing Richard Rivet, PMH-NP, for medication management since about July, 2018 (Exhibit 8F), prior to the date last insured, he was being prescribed psychotropic medications by his primary care provider (Exhibits 2F, 5F, 11F, 13F, and 14F). His medication as of June 13, 2017 consisted of only Wellbutrin (Exhibit 11F), and the evidence of record fails to demonstrate that [Plaintiff] suffered significant adverse side effects from this medication.

The evidence prior to the date last insured indicates that [Plaintiff's] symptoms responded favorably to treatment. For example, he told examiners on November 14, 2016 that he had noted a big difference with a recent increased in Citalopram (Exhibit 2F), and on December 12, 2016 that he had begun counseling two weeks ago and it was going well (Exhibit 2F). It was also reported on January 3, 2017 that since being on medication he had noticed a change for the better and that counseling was going well (Exhibit 2F). Furthermore, as noted above, decrease symptoms were reported at [Plaintiff's] final counseling appointment (Exhibit 14F).

(Dkt. 11 at 33-34).

The ALJ then, as required, considered the four broad areas of mental functioning set out in the disability regulations, known as the Paragraph B criteria. (*Id.* at 34). The ALJ concluded that Plaintiff had a mild limitation in understanding, remembering, or applying information; a mild limitation in interacting with others; a mild limitation in concentrating, persisting, or maintaining pace; and a mild limitation in adapting of managing oneself. (*Id.* at 34-35). Because the ALJ concluded that Plaintiff's medically determinable mental impairments caused no more than mild limitations across the four functional areas, she concluded that his impairments were non-severe. (*Id.* at 35).

As set forth above, the ALJ provided a host of reasons for her determination that Plaintiff's mental health impairments were non-severe during the relevant time period. The Court finds these reasons appropriate and rejects Plaintiff's challenge to their sufficiency.

For example, the ALJ properly considered that during the relevant time period, mental status examinations largely reflected findings that Plaintiff was alert, oriented, cooperative, with appropriate mood and affect. Examiners within that time period found Plaintiff's memory, attention, and concentration to be only mildly impaired. The ALJ acknowledged that Plaintiff demonstrated a worsening of symptoms after that time, but noted that the degree of symptomology documented during the relevant time period did not support a finding of severity. *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633 (2d Cir. 2012) (affirming finding impairments that "predated or postdated the relevant period or did not significantly limit[ ] her physical or mental ability to do basic work activities" to be non-severe).

It was similarly appropriate for the ALJ to consider the relatively conservative treatment sought by Plaintiff, including the fact that he only attended four counseling sessions between November 28, 2016 and March 6, 2017. Also relevant was the fact that the record did not reflect that Plaintiff had ever required psychiatric hospitalization or seek crisis services. The nature of treatment received for an impairment provides appropriate evidence as to its severity and it was not error for the ALJ to take this into consideration.

*Danielle G. v. Berryhill*, No. 5:17-CV-01116 (NAM), 2019 WL 364467, at *12 (N.D.N.Y. Jan. 30, 2019) (noting fact that Plaintiff's "symptoms showed improvement with conservative treatment" as a reason that the condition was appropriately deemed non-severe).

Relatedly, it was appropriate for the ALJ to note the finding at Plaintiff's last counseling session that his anxiety and depression had improved. *See Aman v. Colvin*, 46 F. Supp. 3d 220, 224-25 (W.D.N.Y. 2014) (finding determination that applicant had not suffered from medically determinable impairment was supported by substantial evidence where "the record suggests that plaintiff's treatment and medication were highly effective in mitigating plaintiff's symptoms").

Finally, the ALJ appropriately explained her reasoning in reaching her conclusions about the four broad areas of mental functioning known as the Paragraph B criteria. The ALJ explained how her consideration of Plaintiff's activities of daily living, relationships with others, and findings in medical treatment records contributed to a conclusion that Plaintiff had only a mild limitation in each of the four categories.

Moreover, even had the ALJ erred in her assessment of Plaintiff's anxiety or depression, "the omission of an impairment [by the ALJ] at step two does not in and of itself require remand and may be deemed harmless error." *Rye v. Colvin*, No. 2:14-cv-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (citing *Pompa v. Comm'r of Soc. Sec.*, 73 F. App'x 801, 803 (6th Cir. 2003) and *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)); *Howard v. Comm'r of Soc. Sec.*, 203 F. Supp. 3d 282, 297 (W.D.N.Y. 2016)

("Courts have held that error at step two in determining the severity of impairments is harmless if the ALJ finds at least one other severe impairment and continues through the sequence of the disability analysis because the non-severe impairments can later be considered at the RFC stage."). "This is particularly true where the disability analysis continued and the ALJ considered all of the claimant's impairments in combination in his RFC determination." *Rye*, 2016 WL 632242, at *3 (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013)).

The fact that the ALJ did not ultimately include limitations attributable to Plaintiff's anxiety and depression in the RFC also does not demonstrate error. In her RFC finding, the ALJ stated she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Dkt. 11 at 36). She also discussed the medical opinion evidence relating to Plaintiff's mental health impairments and explained that she discounted Plaintiff's statements to the extent they were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 37). In other words, "the ALJ adequately explained how the evidence supports [her] conclusions about [Plaintiff]'s limitations and discussed [Plaintiff]'s ability to perform sustained work activities." *Murphy v. Astrue*, No. 12-CV-6271T, 2013 WL 1452054, at *6 (W.D.N.Y. Apr. 9, 2013) (quoting *Casino–Ortiz v. Astrue*, No. 06 Civ. 0155(DAB)(JCF), 2007 WL 2745704, at *14 (S.D.N.Y. Sept. 21, 2007), *report and recommendation adopted*, 2008 WL 461375 (S.D.N.Y. Feb. 20, 2008)). Accordingly, the ALJ's decision to not include additional restrictions for Plaintiff's non-severe impairments

of anxiety and depression is supported by substantial evidence.  The Court rejects this basis

for remand.

###    B.    Determination of Plaintiff's RFC

Next Plaintiff argues that the ALJ improperly rejected the medical opinions of

record and relied on her own lay interpretation of raw medical data to craft Plaintiff's RFC.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence

available to make an RFC finding that [is] consistent with the record as a whole."  *Matta*

*v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly

correspond with any of the opinions of medical sources cited in [her] decision."  *Id.*

However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's

RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586

(W.D.N.Y. 2018) (quotation omitted)).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not
> substitute [her] own judgment for competent medical opinion.  This rule is
> most often employed in the context of the RFC determination when the
> claimant argues either that the RFC is not supported by substantial evidence
> or that the ALJ has erred by failing to develop the record with a medical
> opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec.

1, 2017) (quotation and citation omitted).  "[A]s a result[,] an ALJ's determination of RFC

without a medical advisor's assessment is not supported by substantial evidence."  *Dennis*

*v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

Notwithstanding this general rule, "where the medical evidence shows relatively minor

physical impairment, an ALJ permissibly can render a common-sense judgment about

- 14 -

functional capacity even without a physician's assessment." *Keller v. Comm'r of Soc. Sec.*, 394 F. Supp. 3d 345, 352 (W.D.N.Y. 2019) (citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record.  Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]"  20 C.F.R. § 404.1527(c)(2).  Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she "must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted).  These factors include:

> (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Id.*  "An ALJ's failure to explicitly apply the[se] . . . factors when assigning weight at step two is a procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted).  However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed."  *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that 'the Commissioner "will always give good reasons"' for the weight given to a treating source opinion." (quoting *Halloran*, 362 F.3d at 32)). "Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." *Harris*, 149 F. Supp. 3d at 441 (internal quotation marks omitted).

Here, the ALJ relied on appropriate medical opinion evidence in assessing Plaintiff's mental limitations. The ALJ gave great weight to the opinion of Yu-Ying, Ph.D., who conducted an exam of Plaintiff on May 2, 2017. (Dkt. 11 at 40-41, 318-21). Dr. Lin opined that Plaintiff can understand, remember, or apply simple directions without limitation; has mild limitations in understanding, remembering, or applying complex instructions; can use reason and judgment to make work-related decisions without limitation; can interact adequately with supervisors without limitation; is mildly limited in sustaining concentration and performing a task at a consistent pace; mildly limited in regulating emotions; and can maintain personal hygiene without limitation. (Dkt. 11 at 320). Dr. Lin concluded that the evaluation of Plaintiff did not appear to be consistent with any psychiatric problems that would significantly interfere with his ability to function on a daily basis. (*Id.*). The ALJ explained her attribution of great weight to this opinion because

it was supported by the evaluation findings, consistent with the record as a whole, and also consistent with the minimal treatment sought and received by Plaintiff.  (*Id.* at 41).

The ALJ similarly gave great weight to the opinion from State agency psychological consultant R. Nobel, Ph.D.  (*Id.* at 41, 75-85).  Dr. Nobel concluded that Plaintiff did not have a severe mental impairment, (*id*. at 79), and the ALJ explained that she found the opinion well supported and consistent with the record as a whole prior to the date last insured.

As to the assessment of Plaintiff's physical limitations, the ALJ similarly considered the medical opinion evidence and explained the weight given to each provider.  For example, the ALJ gave little weight to William Platzer, M.D., Plaintiff's primary care physician, who opined that Plaintiff would be off-task 25% or more of a typical workday; would miss 20 to 30 days of work a month;[2] could never stoop, crouch, work at unprotected heights or around pulmonary irritants; can lift or carry ten pounds frequently and twenty pounds occasionally; and can sit for 30 minutes at a time for less than a total of 2 hours per workday and stand or walk for 15 minutes at a time for less than a total of 2 hours per workday. (Dkt. 11 at 335-38).  The ALJ acknowledged Plaintiff's treatment history with Dr. Platzer but concluded that the extreme degree of limitations suggested were not supported in the treatment records, particularly during the relevant time period.

The ALJ also gave little weight to the opinion of Daniel Alexander, M.D., who

---

[2]     Conceivably, Dr. Platzer meant to indicate that Plaintiff would miss 20 to 30 days of work a year, rather than per month.  The Court need not resolve this apparent error at this time.

recommended physical therapy, anti-inflammatories, cortisone, and potential surgery to Plaintiff while also simultaneously finding Plaintiff able to work without restriction, frequently able to lift and carry 100 pounds, found no restrictions in Plaintiff's ability to sit, stand, or walk, and opined that he would miss zero days a month and be off task zero percent of the workday. (*Id.* at 325-26). The ALJ explained his determination that the opinion was entitled to little weight in light of its internal inconsistency and lack of support for the opinion in the record. (*Id.* at 39).

Finally, the ALJ gave some weight to the opinion of Trevor Litchmore, M.D., that Plaintiff has moderate to marked limitations with regard to lifting and carrying heavy weights while standing and engaging in activities involving moderate to marked physical exertion. (*Id.* at 41). The ALJ explained her determination to only give some weight to the opinion on the grounds that Dr. Litchmore only saw Plaintiff one time and did not quantify further limitations, but concluded that the opinions were not inconsistent with Plaintiff's RFC for light work or with the evidence as a whole prior to the date last insured.

The Court finds no error in the ALJ's consideration of and reliance upon the medical opinions of record. Contrary to Plaintiff's argument, the ALJ did not base her assessment of Plaintiff's RFC solely on her own lay opinion, but considered the record as a whole, including the medical opinion evidence from multiple sources and Plaintiff's own testimony. "Even where the ALJ's determination does not perfectly correspond with any of the opinions of medical sources cited in his decision, however, the ALJ was entitled to weigh all of the evidence available to make a residual functional capacity finding that was

consistent with the record as a whole." *Trepanier v. Comm'r of Soc. Sec. Admin.*, 752 F. App'x 75, 79 (2d Cir. 2018).  The fact that the ALJ did not give controlling or significant weight to any of the medical opinions, but instead gave only partial weight to multiple opinions in determining the RFC, does not necessarily mean, as Plaintiff suggests, that she must have crafted the RFC herself from the raw data.  Instead, the ALJ adequately explained the basis of her reasoning to accept only portions of several different opinions, coupled with Plaintiff's own testimony, in reaching her determination.  *See Hamilton v. Comm'r of Soc. Sec.*, No. 19-CV-770 (JLS), 2020 WL 5544557, at *4 (W.D.N.Y. Sept. 16, 2020) (disagreeing with argument "that because the ALJ afforded 'limited weight' to Dr. Liu's opinion, the ALJ necessarily and impermissibly relied on her own lay opinion in the RFC assessment" because giving limited weight is not the same as rejecting an opinion in its entirety).  Here, the ALJ explained that her analysis was "consistent with the weight of the objective medical evidence, the reported activities of daily living, other evidence, and the weight of the various medical opinions." (Dkt. 11 at 41).  Plaintiff has not otherwise demonstrated error in that determination.

In sum, the ALJ appropriately assessed Plaintiff's RFC based on the evidence as a whole.  Accordingly, there is no basis for the Court to disturb the Commissioner's finding of non-disability.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 15) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 14) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: March 1, 2022
        Rochester, New York

- 20 -